UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA KOVACS,

    Plaintiff,

v.

ASSOCIATES IN NEUROLOGY,
P.C., and DR. MARK A. KACHADURIAN,

    Defendants.
_____/

CASE NO. 17-13577
HON. DENISE PAGE HOOD

**ORDER GRANTING DEFENDANTS' MOTION TO CORRECT ORDER DENYING SUMMARY JUDGMENT ON PREVIOUSLY DISMISSED CLAIM [#32], DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [#33], and DISMISSING PLAINTIFF'S CAUSE OF ACTION**

**I.   INTRODUCTION**

On November 1, 2017, Plaintiff Melissa Kovacs filed the instant action alleging that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1201 *et seq.* ("PWDCRA"). Plaintiff claims Defendants failed to accommodate her disability, terminated her in retaliation for requesting an accommodation, and discriminated against her on the basis of her disability.

On December 10, 2018, the Court entered a Stipulated Order dismissing Counts I and IV. ECF No. 29. On May 29, 2020, the Court entered an Order Granting in Part

and Denying in Part Defendants' Motion for Summary Judgment. ECF No. 30. In that Order, the Court denied summary judgment on Count I and granted summary judgment with respect to Counts II, III, IV, and V. Accordingly, based on that Order, only Count I remained before the Court.

On June 5, 2020, Defendants filed a Motion to Correct Order Denying Summary Judgment On Previously-Dismissed Claim. ECF No. 32. On June 12, 2020, Plaintiff filed a Motion for Reconsideration. ECF No. 33.

## II.    DEFENDANT'S MOTION TO CORRECT ORDER

Defendants argue that the Court overlooked the fact that the parties had stipulated to, and the Court had ordered, the dismissal of Count I. For that reason, Defendants contend that the Court should not have addressed the arguments regarding Count I or determined that Count I remains viable. The Court agrees.

Fed. R. Civ. P. 60(a) permits courts to correct a mistake "arising from oversight or omission whenever one is found in a judgment, order or other part of the record." Based on the parties' stipulation reflected in the Stipulated Order entered on December 10, 2018, the viability of Count I was no longer at issue or before the Court by the time the Court rendered its May 29, 2020 Order. Accordingly, the Court should not have addressed the parties' arguments regarding Count I and was mistaken in ruling on the viability of Count I. Defendants' Motion to Correct Order Denying

Summary Judgment On Previously-Dismissed Claim is granted.

### III. PLAINTIFF'S MOTION FOR RECONSIDERATION

In order to obtain reconsideration of a particular matter, the party bringing the motion for reconsideration must: (1) demonstrate a palpable defect by which the Court and the parties have been misled; and (2) demonstrate that "correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). *See also Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004); *Aetna Cas. and Sur. Co. v. Dow Chemical Co.*, 44 F.Supp.2d 865, 866 (E.D. Mich. 1999); *Kirkpatrick v. General Electric*, 969 F.Supp. 457, 459 (E.D. Mich. 1997).

A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest, or plain." *Olson v. The Home Depot*, 321 F.Supp.2d 872, 874 (E.D.Mich. 2004). The movant must also demonstrate that the disposition of the case would be different if the palpable defect were cured. E.D. Mich. L.R. 7.1(h)(3). *Brown v. Walgreens Income Protective Plan for Store Managers*, No. 10-CV-14442, 2013 WL 1040530, at *1 (E.D. Mich. Mar. 15, 2013). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3).

Plaintiff argues that the Court made two palpable errors. Plaintiff first contends

that the Court erred by analyzing the facts pursuant to the *McDonnell-Douglas* burden-shifting framework despite acknowledging the existence of direct evidence in the form of party admissions. Plaintiff argues that "the Court held that Plaintiff presented direct evidence of discriminatory intent in the form of statements that 'will be admissible at trial as party admissions.'" ECF No. 33, PgID 682. ECF 30, Order, p. 16. The Court finds no merit in this argument.

It is true the Court acknowledged in its Order that **Plaintiff contended** certain statements, texts, and actions constituted direct evidence of party admissions. *See* ECF No. 30, PgID 659-61 ("Plaintiff contends that there is direct evidence that Defendants retaliated against her when they terminated Plaintiff because of her disability."). The Court did not, however, "hold" that Plaintiff presented direct evidence that Defendants discriminated against her based on her disability. The fact that certain texts or statements might be admissible as party admissions does not establish direct evidence of discrimination. As the Court stated, "such persons cannot speculate about why AIN terminated Plaintiff," and a factfinder would have to make an inference that such texts and statements showed that Defendants discriminated against her on the basis of her disability. *Id.* at 661.

Plaintiff next claims that the Court erred in its application of the burden-shifting framework by focusing too narrowly on whether Plaintiff was "replaced" by someone

outside the protected class (citing ECF No. 30, PgID 661-63). Plaintiff argues, correctly, that a plaintiff need not "necessarily . . . identify similarly-situated individuals outside of the relevant protected group who were treated more favorably," *Lindsay v. Yates*, 578 F.3d 407, 416 (6th Cir. 2009). If a plaintiff does not identify any such person(s), however, they must demonstrate "'additional evidence' exists—beyond that evidence that supports the first three elements of the *McDonnell Douglas* test—that indicates discriminatory intent in 'light of common experience.'" *Id.* at 418. Plaintiff argues that, based on the Court's reasoning, it would be permissible for an employer to fire an employee because of a specific kind of disability (such as Meniere's disease), and then replace someone who has a different disability (such as cancer).

Plaintiff's argument fails for two reasons. First, Plaintiff's attack regarding Harden replacing her was the alternate conclusion by the Court, not the primary and actual basis for the Court's conclusion regarding the fifth element of a prima facie case. In the May 29, 2020 Order, the Court recognized that the fifth element requires a showing that:

> the position remained open, the individual was replaced by a similarly-situated, non-disabled employee, or similarly-situated, non-disabled persons were treated more favorably than she was[]. *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2001); *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

ECF 30, PgID 662-63.  When discussing that element, the Court stated:

> The Court finds that Plaintiff's argument ignores the fact that Defendants did not "hire" any "replacement" because AIN eliminated Plaintiff's position and contracted for EEG technician work at the Novi office to be provided by Synapse. The Court notes that AIN took the same action at its other locations and had already contracted with Synapse to provide AIN with EEG technician services at the Farmington Hills and Southfield locations. Because AIN eliminated having an EEG technician on its staff and payroll, the Court concludes that Plaintiff was not replaced or terminated because of her disability. And, even if Plaintiff was replaced, she was replaced by someone in her protected class (Harden, who had cancer).
>
> For these reasons, the Court holds that Plaintiff cannot satisfy the fifth requisite element of discrimination under the PWDCRA/ADA . . . As Plaintiff cannot establish a prima facie case of discrimination under the PWDCRA and/or the ADA, the Court dismisses her claims for disability discrimination and retaliation with respect to her termination (Counts II and III).

*Id.*

In reaching its conclusion, the Court found that Plaintiff's position did not remain open and AIN did not hire a replacement for Plaintiff because "AIN eliminated Plaintiff's position."  For that reason, Plaintiff could not show that: (1) the position remained open; (2) she was replaced by anyone (whether non-disabled or disabled for a reason other than Meniere's disease); or (3) similarly-situated non-disabled persons were treated more favorably (because there was no such person).  Accordingly, the Court determined then, and reaffirms now, that Plaintiff could not identify any evidence that would satisfy the above criteria of the fifth element.

6

Second, the Court concludes that Plaintiff has not introduced "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [her] for discharge for impermissible reasons," *See* ECF No. 24, PgID 364-67; ECF No. 33, PgID 685-90. Plaintiff argues that she was singled out for discharge because of her disability and points to the evidence the Court discussed in its May 29, 2020 Order regarding Kachadurian's (and other doctors') comments. The Court does not find that to be additional evidence because it is evidence that would support the first three elements of the *McDonnell Douglas* test.

Plaintiff asserts that the agreement between AIN and Synapse is the mechanism by which AIN terminated Plaintiff's employment and shows that her disability was the reason for terminating her employment. But, the Court is not persuaded that AIN's relationship and agreement with Synapse for the Novi location was suspicious or constitutes evidence that AIN terminated Plaintiff because of her disability. *Cf Lindsay*, 578 F.3d at 418 ("the suspicious timing of the termination of the purchasing agreement provides the evidentiary basis for inferring the Yateses acted with discriminatory motives"). In this case, AIN had already entered into agreements with Synapse in 2015 and 2016 to provide EEG testing at AIN's other locations (Southfield and Farmington Hills) and had discussed contracting with Synapse for the Novi location in advance of Plaintiff's termination.

For the reasons stated above, the Court concludes that there were no palpable defects by which the Court and the parties were misled such that a different disposition of this case would result. Plaintiff's Motion for Reconsideration is denied.

## IV. CONCLUSION

Accordingly, and for the reasons stated above,

IT IS ORDERED that Defendants' Motion to Correct Order Denying Summary Judgment On Previously-Dismissed Claim [ECF No. 32] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Reconsideration [ECF No. 33] is DENIED.

IT IS FURTHER ORDERED that, as there are no remaining claims against any Defendant(s), Plaintiff's cause of action is DISMISSED.

IT IS ORDERED.

Dated: May 19, 2023

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE